IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Anthony Marzano, James Herlin, and Patrick Powers,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **Bayer Road Service, Inc., Inc. Doug A. Bayer, and Linda Bayer,** ) <br> ) <br> Defendants. ) <br> ) | Case No: 11 C 7483 <br><br> Judge Ronald A. Guzmán |

**ORDER**

Plaintiffs Anthony Marzano, James Herlin and Patrick Powers move for summary judgment on their Fair Labor Standards Act ("FLSA") claim alleging that Doug and Linda Bayer[1] failed to pay them overtime. For the reasons stated below, the motion [74] is granted. Plaintiffs' motion to bifurcate briefing on the issues of liability and damages [72] is granted. The parties are directed to meet and confer within 14 days of the date of entry of this order to attempt to resolve the issue of damages without further Court involvement. Within 7 days of any meet and confer, Plaintiffs are directed to file a status report as to whether any resolution was achieved and whether they will be filing a motion as to damages. Status hearing is set for March 14, 2014, at 9:30 a.m., but may be stricken based on the results of the parties' meet and confer.

**STATEMENT**

**Facts**

Bayer Road Service, Inc. ("Bayer") was engaged in the business of providing automotive roadside services to clients. (Pls.' Stmt. Facts, Dkt. # 76, ¶ 3.) Linda worked at Bayer as Secretary

---

[1] Defendant Bayer Road Service, Inc. filed for bankruptcy protection; thus, the case against it is stayed. The Court will refer to Linda and Doug Bayer by their first names in this order.

with knowledge of the services provided by the Roadside Assistant Drivers ("RADs"), the nature of the terms and conditions of the services they provided, the amounts paid to the RADs and Bayer's accounting system. (*Id*. ¶ 4.) Doug was the owner of Bayer, and had knowledge similar to Linda. (*Id*. ¶ 5.) Anthony Marzano worked as an employee of Defendants as a RAD from February 6, 2011 until June 27, 2011. (*Id*. ¶ 6.) James Herlin also worked as a RAD at Bayer from August 2010 until March 2011. (*Id*. ¶ 7.) Herlin received the job title of Roadside Assistant Manager in March 2011 and worked in this capacity until February of 2012; however, his job duties and functions remained the same as they had been when he was employed as a RAD. (*Id*.) Patrick Powers worked as a RAD at Bayer from September 2009 until March 2010. (*Id*. ¶ 8.)

Plaintiffs' job duties included helping motorists with various vehicle issues including, but not limited to, flat tires, lockouts, and jumpstarting dead batteries. (*Id*. ¶ 10.) Plaintiffs received calls and/or texts from Bayer dispatching them to service roadside issues that arose throughout the day and night, seven days per week. (*Id*. ¶ 11.) Plaintiffs were required to respond to the calls and were informed that they would be fired if they did not respond. (*Id*.) Plaintiffs were dispatched to, on average, anywhere from forty-five to eighty calls per week, although this number could increase in certain weeks to approximately 100 calls. (*Id*.) The time it took Plaintiffs to service a call from the time of dispatch to the time servicing was completed was, on average, one hour. (*Id*.) As employees classified as independent contractors and receiving 1099 tax forms, Plaintiffs were paid a flat rate of $11.00 per call that they were able to successfully service. (*Id*. ¶ 12.) If Plaintiffs arrived at a dispatched assignment and no client was waiting, they were paid $5.00. (*Id*.) While Plaintiffs were told they would receive extra pay for dispatches outside of a twenty-five mile radius, they rarely received the extra pay. (*Id*.) Herlin received an additional $200.00 per week when he

was a Roadside Assistant manager from March 2011 until February 2012. (*Id*. ¶ 13.)

Bayer did not provide Plaintiffs with a vehicle, and Plaintiffs were not reimbursed for any gas or the wear and tear on their vehicle. (*Id*. ¶ 14.) Plaintiffs were required to display on all sides of their vehicles a decal with the name "Bayer Road Service, Inc.," which was provided to Plaintiffs by Bayer. (*Id*.) When Plaintiffs were dispatched on calls, they were required at all times to wear a safety vest, which had the Bayer name on the back. (*Id*. ¶ 15.) Bayer supplied Plaintiffs with all tools required to perform their jobs as RADs, for which Plaintiffs were charged a weekly cost. (*Id.* ¶ 16.) Although Plaintiffs were told they would be reimbursed for their tools if they left Bayer, they received no such reimbursement. (*Id*.) Bayer required that Plaintiffs be available to work seven days a week, twenty-four hours a day and that they seek prior approval from Bayer for any time taken off work. (*Id*.)

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citation and

internal quotation marks omitted).

Although pro se parties are granted some leniency in how their filings are construed, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). "[A] district court is entitled to decide the motion based on the factual record outlined in the Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (citations and internal quotation marks omitted). Plaintiffs served on the Defendants a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. ## 68, 78.) The notice explained in detail the requirements governing summary judgment, including the requirement that the party opposing summary judgment provide a concise response to the moving party's statement with citations to the record in the case of any disagreement. *See* Local Rule 56.1(b)(3)(B). Although the Defendants dispute certain of Plaintiffs' statements of fact, they do not support the disagreement with citations to the record. Therefore, the Court deems admitted Plaintiffs' facts that are supported by the record and not properly controverted by the defendants. Local Rule 56.1(b)(3)(C) ( "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.")

**Analysis**

*Were Plaintiffs employees?*

Plaintiffs assert that, as employees of Bayer, they were entitled to receive overtime. While Doug and Linda's responses to Plaintiffs' summary judgment motion do not address the issue, their Answer in this matter denies that Plaintiffs were entitled to overtime because they were independent contractors, not employees. (Answer, Dkt. # 18, ¶ 2.) The FLSA only covers employees and defines an "employee" as "any individual employed by an employer." 29 U.S.C. §§ 203(e)(1), 207. The

FLSA further "defines an 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011) (quoting 29 U.S.C. § 203(d)). "For purposes of social welfare legislation, such as the FLSA, employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) (citations and internal quotation marks omitted). The factors that a court considers in determining whether an individual is an employee under the FLSA include:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; 4) whether the service rendered requires a special skill; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id*. at 1535. None of the six factors is dispositive; rather, a court should look at the totality of the circumstances in making its determination. *Solis*, 819 F. Supp. 2d at 749. Moreover, the criteria "must be applied with [the] ultimate notion in mind" that "dependence . . . indicates employee status." *Lauritzen,* 835 F.2d at 1538. As noted, neither Linda nor Doug responds to Plaintiffs' contention that they were employees rather than independent contractors

    <u>Nature and degree of control</u>. "Evidence that reflects the employer's dominance over the 'manner and method' of how work is performed tends to indicate that the individual was an employee under the 'control' of the employer." *Jaworski v. Master Hand Contractors, Inc.*, No. 09 C 07255, 2013 WL 1283534 at *3 (N.D. Ill. Mar. 27, 2013) (citations omitted). For example, in *Solis*, the court held that this factor supported classifying security guards as employees because the guards were provided a five-page policies and procedures handout that the supervisors enforced, the

5

defendant distributed a memorandum detailing what the guards were required to check on their patrols and the order in which the guards did so, how the guards were to check their equipment, and what the guards had to include in their incident reports for each shift. *Solis*, 819 F. Supp. 2d at 750. The *Solis* court further noted that the defendant not only "controlled the tasks that the Guards had to complete during their shifts, the order that these tasks should be completed, and how the Guards were supposed to react to suspicious activity" but also "closely monitored" the guards' compliance with its policies and procedures. *Id.* Similarly, in *Harris v. Skokie Maid and Cleaning Serv., Inc.*, No. 11 C 8688, 2013 WL 3506149, at *7 (N.D. Ill. July 11, 2013), the Court noted that in addition to scheduling the maids and often taking care of their transportation, the company "created detailed and specific cleaning instructions–in English, Spanish, and Polish–for maids to follow as a means of quality control."

In support of their assertion that they were employees, Plaintiffs point out they worked and were paid pursuant to a specific compensation structure dictated by the defendants, were required to be available to respond to a call at any time or face the possibility of being terminated, had to obtain Bayer's approval for any time off of work, and had to purchase and display Bayer's logo on their vehicles and vests while working. Here, however, the record does not indicate as significant a degree of control as in *Solis or Harris*. There is no evidence of any policies and procedures Plaintiffs were required to abide by during a call or that Bayer engaged in any quality control efforts to measure compliance with Bayer's expectations. Thus, while Plaintiffs contend that Bayer monopolized their time and they could not have worked for any other company, they had significant freedom in terms of the manner and method in which they responded to the calls. As noted by the Seventh Circuit, "the question is whether the details of the work were in the control of the [plaintiff]

6

or [company]." *Estate of Suskovich v. Anthem Health Plans Of Va., Inc.*, 553 F.3d 559, 566 (7th Cir. 2009). Because the record indicates that the *details* of the work were in Plaintiffs' control, the Court finds this factor supports a conclusion that Plaintiffs were independent contractors and not employees.

Opportunity for profit or loss. "An independent contractor risks loss of an investment and has the opportunity to increase profits through managerial discretion." *Harris*, 2013 WL 3506149, at *7 (citation and internal quotation marks omitted). Plaintiffs were dispatched to assist drivers and were paid per service call. The facts do not establish that Plaintiffs were able to increase Bayer's profits through managerial discretion. While, as noted below, Plaintiffs made the most significant capital investment by using their own vehicles, the risk of loss was relatively low given that they likely would have had a vehicle regardless of their job. In other words, the record does not contain evidence indicating that Plaintiffs invested in any specialized equipment for which they could incur a loss. *Lauritzen*, 835 F.2d at 1536 ("The migrants [who worked in pickle fields] have invested nothing except for the cost of their work gloves, and therefore have no investment to lose.") This factor supports a finding that Plaintiffs were employees.

Investment in equipment or materials/employment of workers. In *Solis*, the court noted that the defendant "made the kind of substantial investment that an employer would make for employees" when it "provided the majority of equipment" the guards needed including vehicles, gas car insurance and cell phones. *Id*. While the guards had to obtain their own firearms, bullets, handcuffs and uniforms, they did not have private security guard licenses that would allow them to work independently of a security company. *Id*. Thus, the *Solis* court concluded that this factor indicated that the guards were more like employees.

"Investment in this instance is understood to be large expenditures, such as risk capital, or capital investments, and not negligible items or labor itself." *Harris*, 2013 WL 3506149, at *8 (citation and internal quotation marks omitted). Here, while the record does not reflect whether these Plaintiffs had to purchase vehicles in order to take the job, if they did not have a vehicle, they would have had to make the investment in a car. If Plaintiffs already had cars, they would not have had to purchase one. Even though Bayer provided the tools, Plaintiffs had to pay a weekly cost for these as well, but there is no indication in the record that the costs of the tools was significant. Plaintiffs did not employ any workers. Given the lack of evidence in the record as to whether Plaintiffs had to purchase vehicles, the Court does not find this factor to support any particular finding.

Particularized skill. Plaintiffs contend that while they possessed "the skills required to perform basic emergency roadside repair, [they] did not possess such a specialized level of skill that a finding of independent contractor status would be appropriate." (Pls.' Mem. Support Summ. J., Dkt. # 75, at 7-8.) The Court agrees. Plaintiffs' primary duties were changing flat tires, jumpstarting dead batteries and helping clients with lockouts. (Pls.' Stmt. Facts, # 76, ¶ 10.) While these are skills, the Court does not find them to be above and beyond the type that any roadside assistant employee could expect to learn on the job. *Lauritzen*, 835 F.2d at 1537 (noting that "[s]kills are not the monopoly of independent contractors" and stating that "[w]e agree that some skill is required, but we do not find that this level of skill sets the pickle harvester apart from the harvester of other crops").

Degree of permanency and duration of relationship.[2] Powers and Marzano worked for Bayer

---

[2] While the parties make reference to agreements between Plaintiffs and Bayer, it does not appear that these agreements have been made part of the record on summary judgment; therefore, the Court does not address them.

8

for approximately six months and four and half months, respectively, while Herlin worked for Bayer for approximately a year and a half. While these periods of duration are not significant, the record contains no evidence that Plaintiffs were employed for only a finite period of time on the date of hire. In other words, nothing in the record indicates that Bayer did not hire them as permanent positions.

Plaintiffs received 1099 forms, thus supporting Bayer's position that Plaintiffs were independent contractors. *Suskovich*, 553 F.3d at 568 ("[I]ssuing 1099 forms, which are used for non-employee compensation, would be appropriate for independent contractor status.") (citation and internal quotation marks omitted). However, the Court does not deem this to be significant given that Bayer controlled how Plaintiffs were paid and, in Bayer's opinion, Plaintiffs were independent contractors.

<u>Services as integral part of business</u>. Given that Bayer's business was to provide roadside assistance to drivers, the Court concludes that the services provided by Plaintiffs as RADs was an integral part of Bayer's business.

<u>Economic dependence</u>. As noted by the Seventh Circuit, "[e]conomic dependence is more than just another factor. . . . [i]t is instead the focus of all the other considerations." *Lauritzen*, 835 F.2d at 1538. "The final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Id*. (citations and internal quotation marks omitted).

Considering all of the factors described above, and the directive that the FLSA is to be interpreted broadly "in order to accomplish [its] remedial purposes," *Lauritzen*, 835 F.2d at 1534, the Court concludes that Plaintiffs were economically dependent on Bayer. Plaintiffs were expected

to be on call at all times of the day and night, were dispatched on between forty-five and eighty calls (and up to one hundred) calls per week at an average time of one hour each, were required to obtain approval for any time off, and were threatened with being fired if they did not respond to a call. The services Plaintiffs provided were integral to Bayer, Plaintiffs were paid per call and they did not have the opportunity to participate in the profit of the company based on managerial discretion. For these reasons, the Court concludes that Plaintiffs were employees and not independent contractors.

*Were Linda and Doug Bayer employers under the FLSA?*

Doug and Linda's responses to Plaintiffs' motion for summary judgment argue only that they are entitled to summary judgment because Plaintiffs did not perform work for them individually, only for Bayer. The court construes their position to be that they were not "employers" under the FLSA. "The FLSA contemplates liability against not only the corporation owing the overtime compensation but also the individual corporate officers. . . ." *Solis,* 819 F. Supp. 2d at 748. To qualify as an "employer" under the FLSA, an entity or individual must be "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Courts in this district have . . . held that corporate officers with significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees can be personally liable for the corporation's failure to pay owed wages." *Solis*, 819 F. Supp. 2d at 748. In determining individual liability, the Court considers the "economic reality" of the situation and reviews several factors, including whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Harris*, 2013 WL 3506149, at *5 (citation and internal quotation marks omitted).

In the defendants' Federal Rule of Civil Procedure ("Rule") 26(a) disclosures, Doug lists himself as President of Bayer, and as having knowledge of:

> the nature of the services provided by the subject independent contractors and the terms and conditions of their agreements with [Bayer]; the amounts paid to the independent contractors under their agreements with [Bayer]; and the Defendant's compliance with the independent contractor agreements and the inapplicability of any wage statutes to the independent contractors.

(Pls.' Ex. C, Defs.' Rule 26(a) Disclosures, at 2.) Linda is listed as "Secretary" and as having knowledge of the same topics as Doug as well as "[Bayer's] accounting system for tracking the amounts paid to 1099 independent contractors." (*Id.*) Moreover, in their responses to the summary judgment motion, Linda and Doug admit that they acted in their capacities as officers of Bayer. Based on these facts, the Court finds that because Doug and Linda were corporate officers acting in the interest of Bayer in relation to Plaintiffs, they are "employers" for purposes of the FLSA and are individually liable for any damages due Plaintiffs under the FLSA. Doug and Linda's motions for summary judgment on this issue are denied.

**Conclusion**

For the reasons stated above, Plaintiffs' motion for summary judgment against Doug and Linda as to liability [74] is granted. Plaintiffs' motion to bifurcate briefing on the issues of liability and damages [72] is granted. The parties are directed to meet and confer within 14 days of the date of entry of this order to attempt to resolve the issue of damages without further Court involvement. Within 7 days of any meet and confer, Plaintiffs are directed to file a status report as to whether any resolution was arrived at between the parties and whether they will be filing a motion as to damages. Status hearing is set for March 14, 2014, at 9:30 a.m., but may be stricken based on the results of the parties' meet and confer.

**Date**: February 14, 2014

_____
**Ronald A. Guzmán**
**United States District Judge**